921 A.2d 1067

MELISSA PHILLIPS, PLAINTIFF–APPELLANT, v. JOHN GELPKE, DEFENDANT–RESPONDENT, AND BARBARA GELPKE, DEFENDANT.

Argued November 13, 2006—Decided May 17, 2007.

*Richard J. Schachter,* argued the cause for appellant (*Norris McLaughlin & Marcus, P.A.,* attorneys; *Mr. Schachter* and *Andrea S. Glaser,* on the briefs).

*Kevin P. Kovacs,* argued the cause for respondent (*Purcell, Ries, Shannon, Mulcahy & O'Neill,* attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

At age nineteen, plaintiff Melissa Phillips sued her uncle, John Gelpke,[1] for injuries resulting from his sexual abuse that occurred

---

[1] Melissa also sued her aunt, Barbara Gelpke, for negligently permitting the abuse to occur. The claim against Barbara was dismissed prior to trial and

when she was between three and eight years old. The jury awarded plaintiff $750,000 in compensatory damages. That verdict was reversed, however, when the Appellate Division accepted defendant's argument that plaintiff's case never should have advanced to the jury. *Phillips v. Gelpke,* 382 *N.J.Super.* 505, 507, 889 *A.*2d 1108 (App.Div.2006). Plaintiff's case was faulted for not including expert testimony to explain how she came to recall "repressed memories" of childhood sexual abuse events. *Ibid.*

We certified this appeal to review the reversal of plaintiff's judgment, 187 *N.J.* 79, 899 *A.*2d 302 (2006), and now, reverse. Plaintiff's case did not require the production of an expert to explain to the jury how she recalled her past sexual abuse. In this matter, there was no prodding of plaintiff's memory that necessitated an expert's explanation. The credibility of her memory was a matter for the finder of fact. Plaintiff was entitled to present her case of, "I forgot and then I remembered," and to take her chances before the jury. Moreover, to the extent the Appellate Division bolstered its holding by relying on statute of limitations tolling cases that involved an expert's explanation for a plaintiff's inability to recall repressed memories, the court's reliance was misplaced. Tolling cases, premised on a plaintiff's asserted inability to have "discovered" the tort injury, involve different proof requirements. An added showing is demanded of an untimely plaintiff as a condition for late entry to the courts for redress. In that setting, a plaintiff's testimony about forgetfulness, standing alone, cannot supply the justification for an asserted inability to have discovered the injury and timely filed the action.

In this matter, plaintiff's tort action was filed timely. Her cause of action never should have been subjected to a discovery-like threshold as a condition of its submission to the jury.

---

plaintiff did not appeal from the entry of the directed verdict in favor of her aunt. As a result, plaintiff's claims against her aunt were not before the Appellate Division and are not before us. In this appeal, references to "defendant" apply only to John Gelpke.

I.

Plaintiff was living in Florida with her drug-addicted mother, Susan Phillips, when her maternal grandmother, Betsy Phillips, asked defendant to search for them while he was in Florida on business. Defendant found Susan and Melissa living in squalid conditions. At Betsy's instruction and with Susan's consent, defendant brought three-year-old Melissa to New Jersey to live with her grandmother. Thus, plaintiff came to reside in her grandmother's home next door to defendant and his wife, Barbara, who is plaintiff's maternal aunt.

In relevant part, the following are the events plaintiff said she recalled concerning the alleged sexual abuse. Plaintiff testified that, approximately seven years after she traveled with her uncle to New Jersey, she remembered that they had stopped at a motel for the night. She described the motel room as having two beds and remembered that she started to rub her private parts on the end of one of the beds. She recalled defendant "ask[ing] me where I learned that from ... [a]nd he ... told me to come near him." Although she believed that night was the first time defendant sexually abused her, she admitted that "that [was] all I can actually remember" about that event.

She further testified that while living with her grandmother, she often went next door to her aunt and uncle's home. On morning visits, she would climb in bed with them and play a game concerning who would shower first. Plaintiff testified that she would choose her aunt and, as a result, she would remain alone in the bed with her uncle. During those times she would move on top of him. She also testified to touching his genitals under his clothing.

About the time that plaintiff completed kindergarten, plaintiff's mother returned to New Jersey and plaintiff went to live with her. Plaintiff continued to visit her grandmother on weekends and, during those visits, similar incidents involving defendant would occur. Her testimony also included descriptions of other sexual incidents, the last of which occurred when she was eight years old.

In that instance, plaintiff was lying on the couch with defendant when several Girl Scouts rang the front doorbell. Plaintiff testified that, at the time, she believed that the girls saw what she and defendant were doing, and she became embarrassed. That embarrassment, coupled with the fact that she was older and had a better understanding of the sexual nature of what was occurring with defendant, combined to end the abuse.

At the age of eleven, which was approximately three years after the last-claimed act of sexual abuse, plaintiff had a dream during which she imagined herself as a young woman (between eighteen and twenty years old) having sexual relations with defendant. After that dream, plaintiff's recollections of the earlier-described acts of sexual abuse by defendant returned to her episodically in flashbacks. Plaintiff did not divulge the dream or the subsequent memories until age twelve or thirteen, when she told a friend. Approximately a year later, she told a few more friends about the dream. When plaintiff was fourteen years old and learned that her four-year-old half-sister was spending nights at defendant's home, she finally told her mother about the dream and her separate recollections of the acts of sexual abuse by defendant.[2]

When she was nineteen, plaintiff filed the instant civil action against defendants John and Barbara Gelpke, claiming injuries based on sexual abuse that allegedly occurred when plaintiff was between three and eight years old. In support, plaintiff submitted a report from Dr. Madelyn Milchman, a psychologist who opined on plaintiff's injuries arising from the alleged abuse and described, in general, repressed memories. Dr. Milchman, however, did not diagnose plaintiff with any disorder that caused repressed memory.

---

[2] Plaintiff's mother confronted Barbara about the allegation. *Phillips, supra,* 382 *N.J.Super.* at 508, 889 *A.2d* 1108. Although Melissa was present, she was unable to discuss it. *Ibid.* Melissa had no contact with her aunt and uncle over the next several years. *Ibid.* Melissa also informed the Somerset Prosecutor's Office during her teen years, but no prosecution ever ensued. *Ibid.*

Defendants moved for summary judgment on the basis that plaintiff did not produce expert testimony to support a diagnosis of dissociative amnesia [3] and also because plaintiff did not proffer independent corroborative evidence that any act of abuse occurred. The motion court denied the application. Defendants thereafter moved for an in limine order barring Dr. Milchman from testifying that plaintiff suffered from repressed memory syndrome because her expert report contained no such diagnosis. The court granted the in limine motion.

At trial, consistent with her report and based on twenty-eight hours of evaluation, Dr. Milchman testified about plaintiff's psychological injuries. Dr. Milchman also testified about the process by which plaintiff recalled the alleged acts of sexual abuse, specifically plaintiff's dream when she was an eleven-year-old, that she was older and having sex with defendant, which was followed by additional memories or flashbacks of abuse by defendant. Consistent with the in limine order, Dr. Milchman did not opine that plaintiff suffered from repressed memory syndrome to explain or bolster plaintiff's testimony about why she remembered when she did. Dr. Milchman did testify about memories generally and explained that "anything can act as a recall cue, including dreams."

In their testimony, both defendants denied that any sexual abuse occurred. In addition, they produced expert testimony from Dr. William Campagna, a psychologist, who had examined plaintiff on three occasions, for an aggregate of six hours. He

---

[3] Dissociate amnesia involves "an inability to recall important personal information, usually of a traumatic or stressful nature, that is too extensive to be explained by normal forgetfulness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 478 (4th ed. 1994). The disorder is associated with "a reversible memory impairment in which memories of personal experience cannot be retrieved in a verbal form (or, if temporarily retrieved, cannot be wholly retained in consciousness)." *Ibid.* The diagnostic criteria for the disorder require a finding that those "symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." *Id.* at 481.

"found [plaintiff] to be in what we call no acute distress" and that plaintiff did not "exhibit ... any current ... emotional difficulties." He described her mood as "even" or "euthymic." Specifically, he found that plaintiff was "not currently exhibiting signs of significant depression or anxiety or post traumatic stress disorder." Dr. Campagna described plaintiff as "histrionic," that is, someone who is "very outgoing, very moody at times, very suggestible, able to be influenced by other people, not particularly insightful psychologically." He further explained that plaintiff "tend[s] to emphasize the emotional rather than the logical and the rational" and "[o]ften time[s her] thought is affected, more so than other people, by emotions." He acknowledged that plaintiff suffered from an eating disorder that he said was in remission and discounted that the disorder was caused by any alleged sexual abuse.

Significantly, when addressing plaintiff's explanation that she recalled defendant's acts of sexual abuse because she had a dream at age eleven followed by intermittent recollections of events, Dr. Campagna opined as follows:

Q. Now, [plaintiff] testified—claims that she was abused on numerous occasions over a five year period from ages three to eight.

A. That is what she told me, yes.

Q. And multiple times of similar incidents and some episodic different incidents and she claims that she forgot them for several years.

A. That is the word she used, yes.

Q. And then she said she remembered them all. They started coming to her in flashbacks after she had a dream years after she had forgotten about these things.

A. Yes. That is what she told me.

Q. And do you have an opinion as to whether or not that's how memory works?

A. Yes, I do.

Q. And what is that?

A. People can forget things. There's no question. We forget things all the time.

In this case, we're not just talking about simple forgetting because when you forget something, you forget a piece of information. I don't remember what color shirt I had on last Monday. I don't remember. It just—it's out of my head. It's not important. I've forgotten it. I knew it at the time.

In this case—and in all fairness to [plaintiff], I don't know what she means by forgetting. But that's not how memory works.

This is not forgetting one event. This would be forgetting a whole file. I mean this was not a single event. This occurred over and over many times, as I understand it.

So you could say, well, I don't want to think about it any more and push it out of your mind, but to say that it was—the whole file was completely out of my mind and then gradually pieces of the file emerged, that's not how memory works. Memory is related to the impact that the event had on you at the time and what cues may emerge later on.

To simply forget a whole file of information, if—again, if you're using forgetting in the usual way of forgetting, that's not—even common sense would say that you don't forget a whole file. You could forget different pieces, and then when it re-emerged, the whole file would re-emerge.

That's not the way memory works. You wouldn't forget a whole file of information unless that file was so traumatic and so horrible to you that you did more than just forget.

There's more than forgetting. There would be "I can't deal with this, so I have to push it down." That would be what we call repression or suppression. That's not forgetting. That's pushing something out of your mind.

Now, in order to do that, what you—a whole file now, a whole file is being pushed out of my mind. The file would have to contain such painful traumatic material that was threatening and scary to me.

And while I would suggest that a person allegedly being molested is horrible, in this case there is no evidence of threat, violence. As a matter of fact, according to [plaintiff], as a young child, she actually sorted out—she would initiate it sometimes herself. So that pattern is not consistent with repressing something.

So the concept of just the whole file disappeared and then kind of suddenly came back in my opinion is not how memory works. So if it was regular forgetting, it wouldn't work that way, and if it was repression, in my opinion, we don't have the situation where a person could repress a whole file totally for that long, in my opinion.

With that, at the close of the evidence, defendants moved for a directed verdict. They achieved partial success. In respect of plaintiff's claim of sexual abuse against her uncle, the trial court denied the motion, finding the issue to involve "a credibility decision both as to what [plaintiff] says and what [defendant] says happened or didn't happen and, also, as to what the experts say regarding the reliability or lack of reliability of these flashbacks or memories that [plaintiff] has told them about." On the other hand, the court dismissed plaintiff's negligence claim against her aunt, concluding that "[t]here's not enough evidence for this jury to determine rationally that [plaintiff's aunt/defendant's wife] either knew or observed something from which she should have

known that [defendant] was engaging in sexual abuse of [plaintiff]."

On the claim against defendant, the jury returned a verdict in plaintiff's favor and awarded $750,000 in compensatory damages. The trial court denied defendant's motion for judgment notwithstanding the verdict, added accrued interest and costs, and entered an aggregate judgment of $863,520.

On appeal, defendant claimed that plaintiff's judgment was flawed in several respects. For present purposes we note only defendant's successful argument that the verdict should be vacated because plaintiff failed to produce expert testimony to support her assertion that she had forgotten, and then recovered, her recollection of being abused. As the panel explained, the issue was "whether a case based on repressed memories can be submitted to a jury without expert testimony diagnosing the alleged victim as having dissociative amnesia and explaining and justifying the concept that repressed memories can be accurately recalled." *Phillips, supra,* 382 *N.J.Super.* at 510, 889 *A.*2d 1108. The court concluded that "repressed memory is, at least, a highly complex and controversial subject, and one which should not be considered by a jury without expert testimony." *Id.* at 512, 889 *A.*2d 1108. In so holding, the panel disagreed that the testimony about plaintiff's process of recall went to the weight to be given to the substance of her testimony about recalled memories, not to its admissibility. *Id.* at 509–10, 889 *A.*2d 1108.

## II.

In this dispute over whether production of expert testimony was necessary for plaintiff's case to advance to the jury, the rules governing lay and expert testimony frame the start of our analysis. In respect of lay testimony, the foundation for its admission is simply the witness's personal knowledge. *See N.J.R.E.* 602 ("[A] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Neno v. Clinton,*

167 *N.J.* 573, 585–86, 772 *A*.2d 899 (2001); *State v. Feaster (I),* 156 *N.J.* 1, 79, 716 *A*.2d 395 (1998). Once a lay witness's testimony, based on personal knowledge, is admitted, "[t]he extent to which [the] testimony [is] to be believed [is] for the jury." *State v. Carter,* 91 *N.J.* 86, 124, 449 *A*.2d 1280 (1982). Under the present Rules of Evidence, "questions concerning the [witness's] recall are . . . relevant only insofar as they bear upon the weight which the factfinder places upon testimony that has in fact been given." *In re R.R.,* 79 *N.J.* 97, 116, 398 *A*.2d 76 (1979) (commenting on abandonment of former evidential requirement that witness must demonstrate certain powers of observation and recollection). *But see State v. Moore,* 188 *N.J.* 182, 207, 902 *A*.2d 1212 (2006) (holding that hypnotically refreshed testimony of witness is generally inadmissible in criminal trials).

Expert testimony stands on different footing. The admissibility of expert opinion testimony is addressed by *Evidence Rule* 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

*See also State v. Kelly,* 97 *N.J.* 178, 208, 478 *A*.2d 364 (1984) (setting forth three essentials of admissible expert testimony: "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony").

■ The issue in this appeal is whether expert testimony was not only admissible, but also required. As to that, we note first the permissive thrust of *Rule* 702. It embodies the salutary policy that a lay finder of fact should be permitted to have the assistance of an expert's explanatory testimony when making determinations in areas of specialized knowledge. See *State v. Chatman,* 156 *N.J.Super.* 35, 41, 383 *A*.2d 440 (App.Div.) (stating modern standard as one of helpfulness to jury), *certif. denied,* 79 *N.J.* 467, 401

A.2d 224 (1978); *Jobes v. Evangelista,* 369 *N.J.Super.* 384, 399, 849 *A.*2d 186 (App.Div.) (reiterating same in civil context), *certif. denied,* 180 *N.J.* 457, 852 *A.*2d 193 (2004).

■ That said, certain claims require expert testimony. In tort actions, whether expert testimony is needed in respect of breach of duty depends on " 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment' " about a party's conduct. *Scully v. Fitzgerald,* 179 *N.J.* 114, 127, 843 *A.*2d 1110 (2004) (quoting *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982)). Similarly, cases have found expert testimony to be required in certain types of actions in connection with proof of other tort elements. *See, e.g., J.W. v. L.R.,* 325 *N.J.Super.* 543, 547–48, 740 *A.*2d 146 (App.Div.1999) (expert testimony needed to demonstrate psychological and medical damages caused by alleged child sexual abuse); *Schwarze v. Mulrooney,* 291 *N.J.Super.* 530, 541, 677 *A.*2d 1144 (App.Div.1996) (expert testimony needed to perform damages apportionment as among multiple causative factors); *Rubanick v. Witco Chem. Corp.,* 225 *N.J.Super.* 485, 488, 498, 542 *A.*2d 975 (Law Div.1988) (expert testimony required to explain causation in toxic tort wrongful death action), *rev'd on other grounds,* 242 *N.J.Super.* 36, 576 *A.*2d 4 (App.Div.1990), *mod. on other grounds,* 125 *N.J.* 421, 593 *A.*2d 733 (1991).

This appeal presents an issue unique from the above-cited cases. Plaintiff's testimony was not submitted to elucidate breach of a duty, causation, or damages claimed for the tort of sexual abuse. Rather, the question is whether there is something peculiar about plaintiff's *recall* of earlier events, which is beyond the ken of the average juror or is so esoteric that it requires explanation through an expert's testimony.

### III.

### A.

■ Plaintiff testified as to how she came to recall the events of sexual abuse that allegedly occurred when she was between the

ages of three and eight. Her testimony covered an elemental aspect to witness testimony: her memory of the events about which she testified. Her case, as plainly stated earlier, was one of, "I forgot, and then I remembered," the incidents described. She was willing to take her chances before the jury with that explanation and the question is only whether she should have been permitted to do so.

This was not a case in which the jury was being asked to analyze the validity of a memory prodded by medication, *see State v. Pitts*, 116 *N.J.* 580, 663–65, 562 *A*.2d 1320 (1989) (recognizing benefit of expert's interpretation and analysis of professionally conducted sodium amytal (truth serum) examinations of defendant, but only in respect of evaluation of mental state), or hypnosis, *see Moore, supra*, 188 *N.J.* at 207, 902 *A*.2d 1212, or other third-party means of memory stimulation that requires explanation to assist a fact-finder in its evaluation, *see State v. Hungerford*, 142 *N.H.* 110, 697 *A*.2d 916, 917–19 (N.H.1997) (describing how victims retrieved memories of past abuse by submitting to over one hundred sessions of psychotherapy or institutionalization coupled with psychotherapy). Rather, plaintiff's case was dependent on the jury's favorable assessment of her asserted memory of prior events that she recollected without any extrinsic memory retrieval techniques.

We agree with the trial court's conclusion that it was the jury's responsibility to consider plaintiff's story of recollection and to determine whether it was credible, even though unadorned by expert validation that she could recollect as she says she did. *See In re R.R., supra*, 79 *N.J.* at 116, 398 *A*.2d 76 (finding that questions of recall only impact factfinder's weighing of testimonial evidence). The jury would either believe that she recollected events when and how she did, or it would not. Defendant could, and did, present expert testimony to impeach plaintiff's claimed ability to recollect the alleged childhood sexual abuse events. The defendant's evidence, however, proved insufficient. The jury, based on all of the evidence presented, assessed plaintiff's credibil-

ity about how and what she claimed to recollect, and found in her favor. We perceive no error in the trial court's proceedings that allowed the jury to make the determination it reached.

## B.

The Appellate Division, however, concluded differently because it imported into its analysis cases involving distinguishable settings.

First, the panel relied heavily on the New Hampshire case of *State v. Hungerford,* for the proposition that "[t]he phenomenon of repressing recollection of a traumatic event, and subsequently 'recovering' it ... is far from being familiar to the average juror." 142 *N.H.* 110, 697 *A.2d* 916, 921 (1997). In *Hungerford,* the complainants in the State's criminal case explained that they recovered their respective memories of having been sexually assaulted by the defendants through the aid of psychotherapy: one complainant "remembered" being sexually assaulted by her father only after her sister claimed to have been sexually assaulted by the father and after over one hundred therapy sessions in a nine-month period; while the other complainant recalled a sexual assault by a seventh-grade teacher after twice having been institutionalized and as part of intensive psychotherapy at a specialized school. *Id.* at 917–19. The Supreme Court of New Hampshire regarded those witnesses not as "ordinary eyewitnesses with ordinary memories," but rather as witnesses whose repressed memories were brought forth only through the intercession of therapy. *Id.* at 920–21. In reversing the defendants' convictions, the court held that the State was required to produce an expert's explanation for the therapeutic retrieval of victims' "repressed memory" in order to demonstrate the threshold level of reliability of the testimony for admission. *Id.* at 922. We find that case to be different and distinguishable.

Plaintiff here engaged in no therapeutic retrieval of her recollections. She testified before the jury that she recalled the events through a dream and a series of flashbacks before she spoke to a

professional. Her asserted recall was subjected to impeachment by defendant's testimony and that of his expert, who questioned the likelihood of her asserted recall of the events. The trial court made a reasonable assessment of the strength of plaintiff's case at the close of evidence and, consistent with its gatekeeping function, sent the case to the jury. We find no error with that determination. *See Verdicchio v. Ricca,* 179 *N.J.* 1, 30, 843 *A.*2d 1042 (2004) (describing indulgent standard of review that favors plaintiff). The jury then evaluated plaintiff's statements as part of its ordinary estimation of recollection testimony. In this setting, where plaintiff claimed to have recalled the events without professional assistance, we do not find *Hungerford* to provide persuasive support for overturning the jury's verdict.

 Moreover, because plaintiff filed her complaint within the applicable statute of limitations, she did not have the burden of proving why she did not recall the events earlier such that tolling would be necessary.[4] Therefore, to the extent that the Appellate Division also relied on cases from Massachusetts, California, North Carolina, and South Carolina to support its conclusion that "expert testimony is required in this context," *Phillips, supra,* 382 *N.J.Super.* at 512, 889 *A.*2d 1108 (collecting cases), we find those cases inapplicable. Each involved the interplay between the admission of evidence of a tardy memory of an event (due to an alleged repressed memory or dissociative amnesia) and the plaintiff's required demonstration for tolling a relevant statute of limitations. *See Shahzade v. Gregory,* 923 *F.Supp.* 286 (D.Mass.1996) (requiring expert testimony where complainant sought to introduce evi-

---

[4] Here, plaintiff's tort-based complaint alleged acts that occurred eleven years before. Although the statute of limitations for actions "caused by the wrongful act, neglect or default of any person within this state" is two years "next after the cause of any such action shall have accrued," *N.J.S.A.* 2A:14–2, a minor's cause of action does not accrue until he or she reaches the age of eighteen. *N.J.S.A.* 2A:14–21; *see also Green v. Auerbach Chevrolet Corp.,* 127 *N.J.* 591, 598, 606 *A.*2d 1093 (1992). Thus, plaintiff had until her twentieth birthday to file her complaint. She filed when she was nineteen and, therefore, her complaint was timely.

dence relating to alleged repressed memories, recovered during psychotherapy, regarding repeated episodes of non-consensual sexual touching more than forty-seven years prior to filing complaint); *Mary D. v. John D.*, 264 *Cal.Rptr.* 633 (Ct.App.1989) (affirming tolling of statute of limitations, notwithstanding plaintiff's failure to provide expert testimony to support delayed discovery of alleged sexual abuse, because defendant never challenged adequacy of plaintiff's case on that ground); *Barrett v. Hyldburg*, 127 *N.C.App.* 95, 487 *S.E.*2d 803 (1997) (affirming trial court decision that plaintiff could not proceed with evidence of alleged repressed memories of childhood sexual abuse occurring over forty years prior without expert testimony about memory repression); *Moriarty v. Garden Sanctuary Church of God*, 334 *S.C.* 150, 511 *S.E.*2d 699 (Ct.App.1999) (holding that repressed memory syndrome was valid theory and that discovery rule may toll statute of limitations in case of repressed memory of childhood sexual abuse when supported by expert testimony), *aff'd*, 341 *S.C.* 320, 534 *S.E.*2d 672 (2000), *overruled on other grounds by State v. Cherry*, 361 *S.C.* 588, 606 *S.E.*2d 475 (2004).

Generally stated, in order to justify the tolling of a statute of limitations, plaintiffs must explain why they reasonably could not have discovered their cause of action in time to comply with the limitation period. *See Caravaggio v. D'Agostini*, 166 *N.J.* 237, 244–50, 765 *A.*2d 182 (2001); 51 *Am.Jur.*2d *Limitation of Actions* § 179 (2000). In childhood sexual assault cases, that standard is not met by an "I forgot" explanation, which is why an expert is needed. To explain the delay in filing, such a plaintiff also must describe why the memory could not have been recalled, or discovered, in time to file the claim timely. *See generally* Gregory G. Sarno, Annotation, *Emotional or Psychological "Blocking" or Repression as Tolling Running of Statute of Limitations*, 11 *A.L.R.*5th 588, 601–07 (1993) (cataloguing sufficiency of evidence required in various jurisdictions to fulfill discovery rule).[5] Expert

---

[5] Although not part of plaintiff's claim, we note the Legislature's adoption of New Jersey's first statutory cause of action for sexual abuse, the Child Sexual

proof providing that additional corroboration becomes essential in that setting. *See* Russell G. Donaldson, Annotation, *Running of Limitations Against Action For Civil Damages for Sexual Abuse of Child,* 9 *A.L.R.*5th 321, 334 (1993) (noting general requirement of expert testimony imposed on party seeking to toll statute of limitations based on repressed factual elements of alleged sexual assault). However, neither the limitations-period tolling cases referenced by the Appellate Division nor the standard for tolling our statute of limitations applies to plaintiff's case because plaintiff timely filed her complaint. She did not have to meet any tolling discovery-rule requirement that she prove why she could not have remembered earlier, yet later recalled the events of sexual abuse.

In sum, we hold that plaintiff's case did not require expert explanation about her recall of the earlier sexual abuse as a condition of its submission to the jury. Plaintiff retrieved her memories of defendant's sexual assaults independently, without external aid or enhancement, and she filed a timely civil complaint, upon reaching the age of majority, seeking recovery for her alleged childhood injuries. As the trial court correctly recognized, plaintiff's ability to recall the events that she related, and when she recalled them, went to the weight to be accorded to her testimony and to her case in its entirety.

## IV.

The judgment of the Appellate Division is reversed and the matter is remanded for consideration of defendant's remaining issues on appeal.

---

Abuse Act (CSAA), *N.J.S.A.* 2A:61B–1. The CSAA has a generous tolling provision that accounts for late discovery of a sexual assault claim, and which may implicate the need to present expert testimony on repressed memories in appropriate cases. *See N.J.S.A.* 2A:61B–1(b); *see also Hardwicke v. Am. Boychoir Sch.,* 188 *N.J.* 69, 84–86, 902 A.2d 900 (2006) (discussing CSAA's tolling for delayed memories of sexual assault and citing acknowledgement, pre-CSAA, in *Jones v. Jones,* 242 *N.J.Super.* 195, 206, 576 A.2d 316 (App.Div.1990), of expert community's growing acceptance of phenomenon of repressed memories in connection with sexual assault).

Justice RIVERA–SOTO, concurring in the result.

Plaintiff Melissa Phillips testified that, while still a child between the ages of three and eight, she was the victim of several sexual assaults by her uncle, defendant John Gelpke. She explained that some of her memories of those childhood assaults were triggered by a dream she had at age eleven and that, thereafter, she recalled further instances of sexual abuse as flashbacks. Defendant sought to bar that testimony, claiming that plaintiff was required to tender expert testimony supporting her delayed recall as a condition precedent to admissibility, a theory of admissibility rejected by the trial court but embraced by the Appellate Division.

The majority concludes that plaintiff was entitled to advance her "case of[ ] 'I forgot and then I remembered,'" *ante*, 190 *N.J.* 583, 921 *A*.2d at 1068 (2007), and that no expert testimony was required to advance that cause. In the majority's terms, "the question is whether there is something peculiar about plaintiff's *recall* of earlier events, which is beyond the ken of the average juror or is so esoteric that it requires explanation through an expert's testimony." *Id.* at 591, 921 *A*.2d at 1074. The majority concludes that "it was the jury's responsibility to consider plaintiff's story of recollection and to determine whether it was credible, even though unadorned by expert validation that she could recollect as she says she did." *Id.* at 592, 921 *A*.2d at 1074.

I reach that end but through different, more traditional means. Thus, I concur with the majority's result.[1] The concept of recall, on which the majority relies, is but an element of overall witness competence. Thus, in my view, this appeal requires that we focus on the intersection between the *competence* of a witness to testify and the need, if any, for expert testimony to support the witness's recall of an event. From the perspective of a witness's compe-

---

[1] I also concur with the majority's analysis rejecting the Appellate Division's decision below, *Phillips v. Gelpke*, 382 *N.J.Super.* 505, 889 *A*.2d 1108 (App.Div. 2006), and hence need not address it. *See ante*, at 593–96, 921 *A*.2d at 1074–77.

tence, when a witness testifies as to events that trigger the witness's recollection of a past event, that triggering event addresses the weight of the witness's testimony, and not its admissibility. Stated differently, when, as here, a claim is filed timely, a temporarily forgotten memory does not constitute a recovered memory that requires expert testimony in order to be admissible.[2]

The operative concept here is not the element of recall, but the core concept of competence. The overarching rule in respect of testimony concerning factual events is plainly stated: "[e]very person is *competent* to be a witness[.]" *N.J.R.E.* 601 (emphasis supplied). We recently explained that

> *Rule* 601 reflects "the basic policy of our law that every person is qualified and compellable to be a witness and to give relevant and competent evidence at a trial." *State v. Briley,* 53 *N.J.* 498, 506, 251 *A.*2d 442 (1969) (citation omitted). Stated differently, our "system of justice ... has established as a general rule that all persons should be qualified to testify, and that disqualification should be the exception[.]" *Germann v. Matriss,* 55 *N.J.* 193, 217, 260 *A.*2d 825 (1970). As a result, *Rule* 601 focuses on whether "a prospective witness [has] the ability to understand questions and to frame and express intelligent answers...." [*State in Interest of] R.R.,* 79 *N.J.* 97, 114, 398 *A.*2d 76 (1979) (citation and internal quotation marks omitted).
>
> [*State v. G.C.,* 188 *N.J.* 118, 133, 902 *A.*2d 1174 (2006).]

The analysis, therefore, is simple—"[i]n order to be competent to testify, a witness should have sufficient capacity to observe, recollect and communicate with respect to the matters about which he is called to testify, and to understand the nature and obligations of an oath[,]" *State v. G.C., supra,* 188 *N.J.* at 131, 902 *A.*2d 1174 (citations and internal quotation marks omitted)—and those four elements of competence have been codified in our *Rules of Evidence. See N.J.R.E.* 602 (perception), *N.J.R.E.* 601(a) (recollection), *N.J.R.E.* 601(a) (communication), and *N.J.R.E.* 601(b), 603 (obligation for truthfulness).[3]

---

[2] I also concur in the majority's distinction between the quantum of proofs required to admit delayed recall testimony based on whether the underlying claim is timely or time-barred. *Ante,* at 591–96, 921 *A.*2d at 1073–77.

[3] As the majority acknowledges, different rules apply in respect of the admission of or need for expert opinion testimony. Specifically, we permit "scientific,

Against that primary backdrop, there is no meaningful or recognized difference between recall—plaintiff's theory of "I forgot and then I remembered"—and core principles of competence. Reduced to its essence, then, the import of this case addresses witness competence, and not any particular theory of recall. Once competence is established, as it was here, "[t]he extent to which . . . testimony [is] to be believed [is] for the jury." *State v. Carter*, 91 *N.J.* 86, 124, 449 *A.*2d 1280 (1982). Specifically, "questions concerning the [witness's] recall are now relevant only insofar as they bear upon the weight which the factfinder places upon testimony that has in fact been given." *State in Interest of R.R.*, 79 *N.J.* 97, 116, 398 *A.*2d 76 (1979).

In the end, this case developed as it should have. Plaintiff testified as to how and why she recalled the events of sexual abuse that occurred when she was between the ages of three and eight. That testimony, which explained her memory of the events and how those memories came to her, implicates solely a quintessential element of witness competence: plaintiff's memory or recall. There is nothing in plaintiff's recall of the acts of sexual abuse she alleged against defendant that is beyond the ken of the average juror or is so esoteric as to require expert testimony. Defendant, ironically, was advantaged by his successful in limine motion because plaintiff was barred from presenting any expert proofs to explain why her memories were triggered by a dream and then returned to her only in bits-and-pieces. Further, defendant, by way of impeachment, presented expert proofs challenging plaintiff's competence in respect of her recall and, hence, her credibility. The jury, based on *all* of the evidence presented to it,

---

technical, or other specialized knowledge [if it] will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" *N.J.R.E.* 702. Thus, we have underscored that " '[t]he test of need for expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable.' " *Scully v. Fitzgerald*, 179 *N.J.* 114, 127, 843 *A.*2d 1110 (2004) (quoting *Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982)). *See ante*, at 590–91, 921 *A.*2d at 1073.

performed its function and assessed plaintiff's credibility. That, in a nutshell, is precisely how proofs in our system of trials are to be developed. No error—much less reversible error—is present in this record on this point.

The better, more traditional rule of law that commands those conclusions is founded on plaintiff's competence as a witness and not on some idiosyncratic theory of recall. Viewed thusly, plaintiff clearly was competent as a witness; whatever shortcomings her recall of the events may have had were properly addressed by reference to the weight to be given to that testimony, and not to its admissibility.

Therefore, although I reject the majority's analysis as foreign and untethered to traditional evidence law concepts, I nonetheless concur in the result.

*For reversal and remandment*—Chief Justice ZAZZALI, and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO, and HOENS—7.

*Opposed*—None.